IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:

DEBORAH HOLCOMBE,                      CASE NO.: 15-32257-DHW-13

DEBTOR.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Alabama Housing Finance Authority (hereinafter "Movant") and moves the Court for relief from the automatic stay, in order that it may proceed with applicable non-bankruptcy remedies with regard to the property secured by a mortgage of Deborah F. Holcombe (hereinafter "Debtor") and as grounds for said motion says as follows:

1. On or about August 17, 2015, Debtor petitioned this Honorable Court for debtor's protection pursuant to Title 11, Chapter 13 of the United States Code.

2. Debtor's real property is encumbered by a mortgage which is attached hereto as Exhibit "A" and specifically made a part hereof.

3. Movant holds a mortgage lien on this real property, commonly referred to in the attached mortgage as 4201 East Lawnwood Drive, Montgomery, Alabama 36108.

4. Cause exists for removing the automatic stay due to the fact that Movant's interest in said property is not adequately protected. 11 U.S.C. § 362(d)(1).

5. Movant avers the mortgage is in default and Debtor is now four (4) months in arrears in post-petition mortgage payments (March 2016 through June 2016), as more fully described on the statement of loan account in the affidavit attached hereto as Exhibit "B."

6. Debtor's failure to make post-petition mortgage payments demonstrates a continuing default; consequently, if Movant is not granted relief from the automatic stay to proceed with applicable non-bankruptcy remedies with regard to the property secured by a mortgage, it will suffer irreparable injury, loss, and damage.

7. Movant further asserts that the automatic stay should be lifted as such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

8. Movant avers that the fourteen-day stay of Fed. R. Bankr. P. 4001(a)(3) should be waived, as Debtor filed for debtor's protection pursuant to Title 11, Chapter 13 of the United States Code, and as such is on notice of the potential penalties for non-compliance.

WHEREFORE, PREMISES CONSIDERED, Movant prays for the automatic stay to be lifted pursuant to 11 U.S.C. § 362(d) to permit Movant to proceed with applicable non-bankruptcy remedies with regard to the property secured by a mortgage due to default in payments in accordance with the provisions of said mortgage and the laws of the State of Alabama.

/s/ Bowdy J. Brown
Attorney for
Alabama Housing Finance Authority
Our File No.: 49696.1991

OF COUNSEL:
SASSER, SEFTON & BROWN, P.C.
Post Office Box 4539
Montgomery, Alabama 36103-4539
(334) 532-3400

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing Motion to the parties listed below by placing a copy of the same in the United States Mail first-class, postage prepaid, on this the 14th day of June, 2016.

/s/ Bowdy J. Brown

Deborah Holcombe
4201 East Lawnwood Drive
Montgomery, AL 36108

Joshua C. Milam
Shinbaum & Campbell
566 S. Perry Street
Montgomery, AL 36104

Richard D. Shinbaum
Shinbaum & Campbell
P.O. Box 201
Montgomery, AL 36101

U.S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Curtis C. Reding
Post Office Box 173
Montgomery, AL 36101

# EXHIBIT "A"

Multistate            NOTE            FHA Case No.

December 29, 1995
[Date]

4201 EAST LAWNWOOD DRIVE, MONTGOMERY, Alabama 36108
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means

MOLTON, ALLEN & WILLIAMS CORPORATION
and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of

FORTY SEVEN THOUSAND FIVE HUNDRED NINETY SEVEN & 00/100
Dollars (U.S. $ 47,597.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX 99/100
percent ( 6.990 %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on February 1, 1996. Any principal and interest remaining on the first day of January 2026, will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at MOLTON, ALLEN & WILLIAMS CORPORATION, P.O. BOX 2407, BIRMINGHAM, AL 35201-2407 or at such other place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of $ 316.34. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge     ☐ Growing Equity Allonge     ☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.

FHA Multistate Fixed Rate Note - 2/91

~-1R (9103).03
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 2    Initials: 



## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.00** %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
DEBORAH F HOLCOMBE        -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

-1R (9103).03                Page 2 of 2

Without Recourse, Pay to the Order of
ALABAMA HOUSING FINANCE AUTHORITY
MOLTON, ALLEN & WILLIAMS CORPORATION

By: _____
Louis Kulovitz, Jr.
Executive Vice President

PAY TO THE ORDER OF
REGIONS MORTGAGE, INC.
WITHOUT RECOURSE

_____
Michael J. King
Single Family Administrator
Alabama Housing Finance Authority

Without recourse, Pay to the order of
ALABAMA HOUSING FINANCIAL AUTHORITY
Regions Mortgage, Inc.

By _____
Gregory McKitt
LOAN DELIVERY OFFICER

Without Recourse:

Pay to the Order of:

_____
Alabama Housing Finance Authority
Kathy Boston
Servicing Manager

———————————————— [Space Above This Line For Recording Data] ————————————————

State of Alabama

# MORTGAGE

FHA Case No.

THIS MORTGAGE ("Security Instrument") is given on  December 29, 1995   . The Grantor is
DEBORAH F HOLCOMBE Unmarried

("Borrower"). This Security Instrument is given to

MOLTON, ALLEN & WILLIAMS CORPORATION

which is organized and existing under the laws of   The State Of Alabama               , and whose
address is   P.O. BOX 2407, BIRMINGHAM, AL 35201-2407

("Lender"). Borrower owes Lender the principal sum of
FORTY SEVEN THOUSAND FIVE HUNDRED NINETY SEVEN & 00/100

Dollars (U.S. $  47,597.00  ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   January 1, 2026   . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in          Montgomery                            County, Alabama:

Lot 9, Block O, according to the Map of Woodcrest Estates Plat No. 3, as the map of same appears of record in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 23, at Page 20.

The proceeds from this mortgage have been applied toward the purchase price of the above described property, and this is, therefore, a purchase money mortgage.

Attached hereto and incorporated herein by reference is the Alabama Housing Financing Authority Tax-Exempt Financing Rider.

which has the address of   4201 EAST LAWNWOOD DRIVE, MONTGOMERY                 [Street, City],
Alabama         36108          [Zip Code] ("Property Address");

4R(AL) (9505)      FHA Alabama Mortgage - 5/95
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6        Initials:

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall deal with the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage or deficiency as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
<u>Third</u>, to interest due under the Note;
<u>Fourth</u>, to amortization of the principal of the Note;
<u>Fifth</u>, to late charges due under the Note.

Case 15-32257    Doc 33    Filed 06/14/16    Entered 06/14/16 13:16:03    Desc Main
Document     Page 9 of 20

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Secretary determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in

paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) by the Borrower, and
(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note secured thereby not be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 9, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9.b. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of this Security Instrument.

**16. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 16.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 13. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in Montgomery County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**18. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**19. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**20. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Graduated Payment Rider
- [ ] Growing Equity Rider
- [X] Other [specify] TAX EXEMPT FINANCING RIDER

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____ (Seal)
DEBORAH F HOLCOMBE             -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

**STATE OF ALABAMA,** Montgomery County ss:

On this 29th day of December , 95 , I, C. Lanier Branch , a Notary Public in and for said county and in said state, hereby certify that Deborah F. Holcombe , whose name(s) is signed to the foregoing conveyance, and who is known to me, acknowledged before me that, being informed of the contents of the conveyance, she executed the same voluntarily and as her , act on the day the same bears date.
Given under my hand and seal of office this 29th day of December , 95

My Commission Expires: 5/4/96

Notary Public C. Lanier Branch

This instrument was preparedby
∧ ~4R(AL) (9505)

Copeland, Franco, Screws & Gill

Page 6 of 6

## TAX-EXEMPT FINANCING RIDER
## ALABAMA HOUSING FINANCING AUTHORITY
### Single Family Mortgage Revenue Bond Program

THIS TAX-EXEMPT FINANCING RIDER is incorporated into and shall be deemed to amend and supplement the mortgage of the same date given by the undersigned ("Borrower" or "Mortgagor") to __Molton, Allen & Williams Corporation__ ("Lender" or "Mortgagee") and covering the property described in the Mortgage and located at __4201 East Lawnwood Drive, Montgomery, AL 36108__. In addition to the covenants and agreements made in the Mortgage, Mortgagor and Lender further covenant and agree as follows:

Lender, or such of its successors or assigns as may be separate instrument assume responsibility for assuring compliance by the Mortgagor with the provisions of this Tax Exempt Financing Rider, may require immediate payment in full of all sums secured by this Mortgage if:

(a) All or part of the property described in the Mortgage is sold or otherwise transferred (other than by devise, descent or operation of law) by Mortgagor to a purchaser or other transferee:

(i) Who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143(c) and (i)(2) of the Internal Revenue Code; or

(ii) Who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in section 143(d) and (i)(2) of the Internal Revenue Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143(d)(1); or

(iii) At an acquisition cost which is greater that 90 percent of the average area purchase price (greater that 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

(iv) Who has a gross family income in excess of 115% of the applicable median family income (140% of the applicable median family income for a purchaser or transferee of a residence in a target area), except that 100% and 120% shall be substituted for 115% and 140%, respectively, if the purchaser or other transferee has a family of fewer than 3 individuals, all as provided in Sections 143(f) and (i)(2) of the Internal Revenue Code; or

(b) Mortgagor fails to occupy the property described in the Mortgage without prior written consent of Lender or its successors or assigns described at the beginning of this Tax Exempt Financing Rider, or

(c) Mortgagor omits or misrepresents a fact that is material, including without limitation, with respect to the provisions of Section 143 of the Internal Revenue Code in an application for the loan secured by this Mortgage.

References are to the 1986 Internal Revenue code in effect on the date of execution of the Mortgage and are deemed to include the implementing regulations.

BY SIGNING BELOW, Mortgagor accepts and agrees to the terms and provisions in this Tax-Exempt Financing Rider.

IN WITNESS WHEREOF, the Mortgagor has executed this Tax-Exempt Financing Rider and Addendum on this __29th__ day of __December, 19 95__

Signature: _____  Signature: _____
Deborah F. Holcombe

| | |
|---|---|
| INDEX | |
| REC FEE | 5.00 |
| TAX-EXEMPT | 1.00 |
| MRTG TAX | 17.50 |
| CASH | 71.40 |
| ITEM - 4 | 94.90 |
| 01-02-96 TUE #0 | 1 CLERK 4240 15:36TH |

STATE OF ALABAMA
__Montgomery__ COUNTY

The undersigned, a notary public in and for said county, in said State, hereby certify that __Deborah F. Holcombe__ and _____ who signed the foregoing Tax-Exempt Financing Rider and known to me, acknowledge before me on this day that, being informed of the contents of the foregoing Tax-Exempt Financing Rider executed same voluntarily on the day the same bears date.

Given under my hand and official seal this __29th__ day of __December__, 19__95__.

(SEAL)

STATE OF ALA.
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON

1996 JAN -2 PM 2: 31

Notary Public / C. Lanier Branch
My Commission Expires: __5/4/96__

## ASSIGNMENT OF MORTGAGE

STATE OF ALABAMA

**MONTGOMERY** COUNTY

FOR VALUE RECEIVED, the undersigned Molton, Allen & Williams Corporation organized and existing under the laws of the State of Alabama, does hereby GRANT, BARGAIN, CONVEY, ASSIGN AND DELIVER unto Alabama Housing Finance Authority, a corporation, its successors and assigns, that certain mortgage executed by **DEBORAH F. HOLCOMBE, UNMARRIED**, to Molton, Allen & Williams Corporation in the principal sum of $ **47,597.00**, dated the **29TH** day of **DECEMBER**, 199**5**, and filed for record on the **2ND** day of **JANUARY**, 199**5\***, in the Office of the Judge of Probate of **MONTGOMERY** County, Alabama, in Mortgage Book No. **1623**, on page No. **0444**, together with the debt thereby secured and the note therein described and all interest of the undersigned in to the lands and property conveyed by said mortgage. * THE PURPOSE OF RE-RECORDING ASSIGNMENT TO CORRECT FILED FOR RECORD DATE TO READ JANUARY 2ND 1996 IN LIEU OF 1995
TO HAVE AND TO HOLD unto the said Alabama Housing Finance Authority, its successors and assigns, FOREVER.

IN WITNESS WHEREOF, the said Molton, Allen & Williams Corporation, has caused this instrument to be executed in its name by Jonathan P. Mulkin, its Senior Vice President, and its corporate seal to be hereto affixed and attested by Dianne Mitchell, its Closing & Shipping Manager, both of whom are thereunto duly authorized, this the **10TH** day of **JANUARY**, 199 **6**.



Molton, Allen & Williams Corporation
Lender's Name

(Corporate Seal)

BY: _____
Name  Jonathan P. Mulkin
Title  Senior Vice President

Attested by: _____
Name  Dianne Mitchell
Title  Closing & Shipping Manager

```
INDEX
REC FEE
REC FEE
CASH
ITEM    3
03-27-96 WED #0       1 CLERK 5777 11:15:14
```

STATE OF ALABAMA
JEFFERSON COUNTY

I, the undersigned, a Notary Public in and for said State, do hereby certify that Jonathan P. Mulkin and Dianne Mitchell whose names and as Senior Vice President and Closing & Shipping Manager, respectively, of Molton, Allen & Williams Corporation, are signed to the foregoing conveyance, and who are known to me acknowledge before me on this day, that being informed of the contents of the conveyance, they, as such authorized representatives and with full authority, executed the same voluntarily for and as the act of said corporation.

GIVEN under my hand and official seal, this the **10TH** day of **JANUARY**, 199 **6**.

(Notary Seal)

Notary Public, Alabama, State of Large
_____

This instrument was prepar
as an employee of   Mo
                    P.
                    Bir

State of Alabama  
Montgomery County                                   Pool Number

For value received, the undersigned Alabama Housing Finance Authority does hereby grant, bargain, sell, convey, assign and deliver unto Regions Mortgage, Inc.., its successors and assigns, a certain mortgage hereinafter more particularly described, and filed for record as indicated below, together with the Note therein described, and all its interest in and to the land and property conveyed by said mortgage, viz:

| Mortgagor(s) | Book | Page | Loan Number |
|---|---|---|---|
| Deborah F Holcombe | 1623 | 0444 | |

To have and to hold unto the said Regions Mortgage, Inc. its successors and assigns forever.

In witness whereof, the said Alabama Housing Finance Authority has caused its name to be signed hereto, attested, and its corporate seal affixed by its authorized officers on this date: January 19, 1996.

Attest:                                              Alabama Housing Finance Authority

R. Stephen Nesmith                                   Michael J. King  
Single Family                                        Single Family Administrator  
Operation Manager

State of Alabama  
County of Montgomery

I, the undersigned, a Notary Public in and for said State, hereby certify that Michael J. King, and R. Stephen Nesmith, whose names as Single Family Administrator and Single Family Operation Manager, Respectively, of Alabama Housing Finance Authority are signed to the foregoing instrument, and who are known to me, acknowledged before me on this day, that being informed of the contents of this instrument, they as such officers with full authority, executed the same voluntarily for and as the act of such corporation.

Given under my hand and official seal this date: 1-22-96

This instrument was prepared by:  
Regions Mortgage, Inc.  
P. O. Box 669                                        Notary Public  
Montgomery, Al 36101-0669                            My Commission expires:  
Lori K. Joyner

MY COMMISSION EXPIRES  
JUNE 23, 1999

When Recorded Return To:
Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

STATE OF ALA.
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON
RLPY 03159 PG 0365 2005 Aug 26 04:59PM

REESE MCKINNEY JR.
JUDGE OF PROBATE

| INDEX | $5.00 |
| REC FEE | $2.50 |
| CERT | $1.00 |
| CHECK TOTAL | $8.50 |
| 2585 | Clerk: SANDRA 11:50AM |

RLPY 03159 PAGE 0365

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **REGIONS BANK DBA REGIONS MORTGAGE, AS SUCCESSOR BY MERGER TO REGIONS MORTGAGE, INC. FORMERLY KNOWN AS REAL ESTATE FINANCING, INC., AN ALABAMA CORPORATION, WHOSE ADDRESS IS 215 FORREST STREET , HATTIESBURG, MS 39401, (ASSIGNOR)**, by these presents does convey, grant, sell, assign, transfer and set over the described deed of trust together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **ALABAMA HOUSING FINANCE AUTHORITY, WHOSE ADDRESS IS 2000 INTERSTATE PARK DR. SUITE 408, MONTGOMERY, AL 36109, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)**.
Said Mortgage made by: **DEBORAH F HOLCOMBE** and recorded in Real Property in Mortgage Book 1623 ,page 0444 and/or Doc # of the records in the office of the Judge of Probate of MONTGOMERY County, Alabama.

Dated: 08/02/2005
REGIONS BANK DBA REGIONS MORTGAGE, AS SUCCESSOR BY MERGER TO REGIONS MORTGAGE, INC., FORMERLY KNOWN AS REAL ESTATE FINANCING, INC.

BY: _____
BRENDA GOFF
VICE PRESIDENT

STATE OF MISSISSIPPI  COUNTY OF Lamar
I, the undersigned authority, a notary public in and for said County and State, hereby certify that BRENDA GOFF whose name as VICE PRESIDENT of REGIONS BANK DBA REGIONS MORTGAGE, AS SUCCESSOR BY MERGER TO REGIONS MORTGAGE, INC. FORMERLY KNOWN AS REAL ESTATE FINANCING, INC. a corporation, is signed to foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.
Given under my hand THIS 02ND DAY OF AUGUST IN THE YEAR 2005

_____
LEAH KING   Notary Public
My commission expires 06/13/2009

Document Prepared By:
J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

form5/FRMAL1



# EXHIBIT "B"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:

DEBORAH HOLCOMBE,   CASE NO.: 15-32257-DHW-13

DEBTOR.

## AFFIDAVIT OF ALLISON NELSON IN
## SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Before me, the undersigned authority, personally appeared Allison Nelson, who being known to me and by me first duly sworn on oath, does depose and states the following:

1.

My name is Allison Nelson and I am employed as a Foreclosure/Bankruptcy Specialist at Alabama Housing Finance Authority ("Movant") and make this affidavit in such capacity. I have an understanding of how the books, records, and computer systems relating to loan servicing work at Movant. It is the normal course of business for Movant to maintain the records relating to the account of the Debtor within a reasonable time after the transaction they reflect. I have reviewed the books, records and payment processing related to the Note and Mortgage made by Movant described herein, and I am personally familiar with the account of the Debtor as denoted in this affidavit.

2.

The Debtor executed a Note and Mortgage in the principal amount of $47,597.00 on December 29, 1995, which Note is secured by a Mortgage on the real property being more particularly described in Movant's Motion for Relief from Automatic Stay on file and as evidenced by the Note and Mortgage attached to Movant's said Motion. The subject Note with Movant bears a rate of interest as therein provided.

3.

I have prepared a statement of the loan account from the computer and other records that are maintained by Movant in the regular course of its business. The loan is in default for the post-petition monthly installments of March 2016 ($464.54) and April 2016 through June 2016 ($491.39 each) plus accumulated late charges of $77.56 (excluding attorney fees and costs). The statement of loan account is as follows:

| POST PETITION DUE DATE | DATE RECEIVED | AMOUNT $ | MONTH APPLIED |
|---|---|---|---|
| 09/15 | 09/28/15 | 501.00 | 09/15 |
| 10/15 | 10/30/15 | 493.12 | 10/15 |
| 10/30/15 payment reversed on 11/04/15 in the amount of | | | |

| Post Petition Due Date | Date Received | Amount $ | Month Applied |
|---|---|---|---|
| 10/15 | 02/11/16 | 3091.60 | 10/15 |
| 11/15 | | | 11/15 |
| 12/15 | | | 12/15 |
| 01/16 | | | 01/16 |
| 02/16 | | | 02/16 |
| 03/16 | - | - | - |
| 04/16 | - | - | - |
| 05/16 | - | - | - |
| 06/16 | - | - | - |

4.

The aggregate amount owed through July 1, 2016 (excluding attorney fees and costs) is:

| | |
|---|---|
| Principal | $28,110.33 |
| Interest | 1,109.50 |
| Pro rata MIP | 21.50 |
| Recoverable Corporate Advance | 427.19 |
| Late Charges | 77.16 |
| NSF Balance | 10.00 |
| Unpaid Other Fees | 110.00 |
| Record Satisfaction | 0.00 |
| **TOTAL** | **$29,865.68** |

I hereby certify under penalties of perjury that the foregoing is true and correct this 13th day of June, 2016.

_____(L.S.)
Allison Nelson

Sworn to and subscribed before me on this the 13th day of June, 2016.

_____
Notary Public
My commission expires: 9-18-17